COURT OF APPEALS OF VIRGINIA


Present: Judges Petty, AtLee and Senior Judge Clements


GEORGIA HURST

v.     Record No. 0657-18-3

CITY OF ROANOKE DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
OCTOBER 30, 2018


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
William D. Broadhurst, Judge

(Suzanne Moushegian; Moushegian Law, P.L.L.C., on brief), for
appellant. Appellant submitting on brief.

(Daniel J. Callaghan, City Attorney; Heather P. Ferguson, Assistant
City Attorney; Brittany F. Gordon, Guardian *ad litem* for the minor
child; Steidle Law Firm, on brief), for appellee. Appellee and
Guardian *ad litem* submitting on brief.


Georgia Hurst (mother) appeals the order terminating her parental rights to her child and

approving the goal of adoption. Mother argues that the circuit court erred by (1) terminating her

parental rights pursuant to Code § 16.1-283(B) and (C)(2) because she had substantially complied

with the requirements of the City of Roanoke Department of Social Services (the Department) and

had made progress toward eliminating the conditions that led to and required the continuation of the

child being placed in foster care; and (2) finding that it was in the child's best interests to terminate

her parental rights and approve the goal of adoption. Upon reviewing the record and briefs of the

parties, we conclude that the circuit court did not err. Accordingly, we affirm the decision of the

circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

Mother is the biological parent to K.H.[1] Approximately one month after K.H.'s birth, the child was hospitalized due to anemia, poor weight gain, and apnea. The Pulaski County Department of Social Services investigated the matter and assumed emergency custody of K.H. A protective order was put in place, and the child subsequently was returned to mother. After mother completed the required services, the protective order was dismissed.

Since the incident in 2007, mother and K.H. have been the subject of numerous child protective service reports and investigations. The Montgomery County Department of Social Services placed K.H. in foster care again from July 14, 2011 until August 7, 2012 because mother was incarcerated and unable to identify a caretaker for K.H. Mother and her boyfriend, Steven Welch, threatened to blow up a neighbor's home and threatened the neighbors with a sword. The police found a pipe bomb and black powder in the home, where K.H. was present. After mother's release from jail, she complied with probation and the service plan, so K.H. was returned to her.

Between March 2015 and November 2016, the Department received and investigated seven additional complaints. The Department provided assistance and services to the family and later closed its cases. In November 2016, the Department received a report that K.H. had overheard Welch ask someone on the telephone to bring him crack cocaine. Then, after someone came to their house, K.H. saw mother and Welch lock themselves in their bedroom. K.H. also reported that Welch had sexually abused her two years earlier. Welch said that K.H. was lying and spanked her.

---

[1] The Department was unable to determine the child's father.

K.H. was worried about reporting the incidents because she feared Welch would hit her. When the Department asked mother about the reported incidents, mother said that K.H. "makes up lies like this all the time" and that Welch had not done anything to K.H. However, mother agreed to a safety plan and to keep Welch away from K.H.

On November 14, 2016, K.H. reported that Welch was in the home over the weekend and that mother yelled at her for reporting the abuse. On November 15, 2016, the Department spoke with mother, who said that K.H. stayed with a friend the previous night because Welch was in the house. Mother could not provide a last name or contact information for the friend with whom K.H. stayed. Mother and the Department discussed the option of mother and K.H. staying at the Rescue Mission until other living arrangements could be made. On November 16, 2016, the Department received a report that mother and Welch locked K.H. out of the house, so K.H. stayed with a neighbor. On November 17, 2016, mother took a drug test, which came back positive for cocaine. Mother denied using cocaine but admitted smoking marijuana.

On the night of November 29, 2016, mother and K.H. stayed at the Rescue Mission. According to mother, K.H. brought a pair of scissors into the room and threatened to kill herself. The next day, mother told the Department that she did not take K.H. to the hospital for an evaluation because it was past curfew at the Rescue Mission. The school reported that K.H. was expressing suicidal tendencies. Due to concerns about mother's ability to provide adequate supervision and care for K.H., the Department requested an emergency removal order for K.H., who was hospitalized from November 30, 2016 until December 7, 2016.

On December 7, 2016, the City of Roanoke Juvenile and Domestic Relations District Court (the JDR court) entered a preliminary removal order and found that K.H. was abused or neglected. While K.H. was in foster care, the Department required mother to maintain safe and stable housing, insure that Welch was not living in the home, obtain and maintain stable and verifiable

employment, attend visitation, comply with random drug screens, attend a substance abuse assessment and follow any recommendations, attend appointments with a psychiatrist, participate in individual counseling, complete a parenting class, and maintain contact with the Department.

The Department also referred mother for a psychological and parenting capacity evaluation. On May 9, 2017, Dr. Klaire Mundy completed her evaluation of mother. Dr. Mundy expressed concern about mother's limited cognitive ability,[2] which led to her having "the same problematic behaviors over and over again." Dr. Mundy also found that mother "engage[d] in a pattern of blame and deflection, and the majority of her report suggested that her daughter was at fault for much of the problems that the family has experienced." Mother reported that "all of the stress related to parenting [was] based on the child's behavior" and suggested that K.H. was "causing all the stress." Dr. Mundy noted that mother's "focus appears to remain on having her own emotional needs met versus ensuring the needs of her young daughter." After evaluating mother, Dr. Mundy recommended that mother be a joint custodian, as opposed to a primary caregiver, for K.H. because mother "does not possess the intellectual strength, executive functioning abilities, or insight to ensure that her daughter is provided with a safe and supportive environment." Dr. Mundy explained that even if mother complied with all of the recommended services, her cognitive level was not going to change, and she would continue to have a lack of insight and concrete thought pattern.

After receiving Dr. Mundy's recommendations, the Department reviewed them with mother. The Department discussed with mother the need for a joint custodian, but mother was unable to provide the names of any possible relatives. The Department also referred mother to an anger management class and an Alcoholics Anonymous (AA) group. Mother completed the anger management class and reported that her AA group was no longer meeting. Mother also completed a parenting class and regularly attended sessions with her counselor and psychiatrist.

---

[2] Mother's IQ tested in the second percentile.

Mother informed the Department that she received disability income and had housing through Section Eight. The Department remained concerned, however, about Welch's involvement in the family because it appeared that mother remained in a relationship with Welch through March 15, 2018. Mother visited with K.H. on a weekly basis, until December 14, 2017, when the Department stopped visitations. The Department had to intervene during some of the visits because mother discussed inappropriate matters with K.H. The Department also was worried about K.H.'s behavior during the visits. Although K.H. was nine years old, she acted like a toddler by sitting in a high chair, sitting in her mother's lap, and using only two or three words in a sentence.

In addition to the above requirements, the Department expected mother to participate in random drug screens, with which she complied on April 26, May 15, and September 1, 2017. Mother tested positive for cocaine with each test, but repeatedly denied using cocaine. Due to her self-reports, she did not qualify for services for substance abuse treatment. On September 8, 2017, after the Department advised mother of her positive drug screen from September 1, mother was hospitalized until September 11, 2017, for mental health issues and making homicidal threats against the social worker. Mother's counselor sent a letter to the Department to request that the social worker not have direct contact with mother because mother viewed the social worker as "an emotional trigger." The Department assigned a different social worker to communicate with mother.

After her release from the hospital, mother was referred to another substance abuse treatment program. Mother started the program, but continued to test positive for cocaine on October 23, November 13, December 6, December 18, and December 28, 2017.[3] She was referred to the Day Treatment Program; however, she was later discharged from the program because she continued to have positive drug screens. She started a different substance abuse treatment program

---

[3] Mother refused to comply with a drug screen on December 11, 2017.

in February 2018, and again tested positive for cocaine on February 15, March 5, and March 19, 2018.

On November 21, 2017, the JDR court entered orders terminating mother's parental rights and approving the goal of adoption. Mother appealed to the circuit court.

On March 27, 2018, the parties appeared before the circuit court. The Department presented evidence that K.H. had mental and emotional health needs, as well as academic needs. K.H. was diagnosed with anxiety, specified mood disorder, post-traumatic stress disorder, and attention deficit/hyperactivity disorder. K.H. attended therapy on a weekly basis and took medicine for her mental health needs. Since entering foster care, K.H. was hospitalized three times, once in November 2016 and twice in February 2017, for suicidal and homicidal ideations. On April 13, 2017, the Department placed K.H. in a new foster home, where she has done well. However, that placement is not an adoptive placement for K.H.

K.H. also was being tested to determine whether she had an intellectual disability. At the time of the circuit court hearing, she was two grades behind her peers in elementary school. She had an individualized education plan and participated in therapeutic day treatment.

At the conclusion of all of the evidence and argument, the circuit court found that it was in K.H.'s best interests to terminate mother's parental rights pursuant to Code § 16.1-283(B) and (C)(2) and approve the goal of adoption. On April 10, 2018, the circuit court entered an order memorializing its rulings. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558, 811 S.E.2d 835, 840-41 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128,

409 S.E.2d 460, 463 (1991)).  "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).

*Termination of parental rights*

Mother argues that the circuit court erred in terminating her parental rights pursuant to Code § 16.1-283(B) and (C)(2).  She asserts that she substantially remedied, or corrected, the conditions that led to K.H. being placed in foster care.  Mother emphasizes that she complied with the Department's requirements, including completing a parenting class and an anger management class.  She attended counseling and met with her psychiatrist.  She had stable housing and regularly visited with K.H.

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1.  The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2.  It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.  In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Furthermore, the following is *prima facie* evidence of the conditions under Code § 16.1-283(B)(2): "[t]he parent or parents have a mental or emotional illness or intellectual disability of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his age and stage of development."

On December 7, 2016, the JDR court adjudicated that K.H. was an abused or neglected child, and on February 2, 2017, it entered a dispositional order regarding the abuse and neglect. Mother did not appeal this finding. The evidence proved that K.H. was hospitalized for suicidal ideations when the Department removed her from mother's care.

The Department provided mother with numerous services; however, despite those services, mother was unable to meet K.H.'s needs. Dr. Mundy determined that mother had "significant decrements in the areas of executive functioning" and had an "emotional pattern that was consistent with that of a young teen." As a result, Dr. Mundy opined that mother was "likely to experience difficulty with her role of a caretaker." Dr. Mundy stated, "Of greatest concern is the fact that this pattern of problematic interpersonal interaction, poor parenting skills, and lack of insight have been characterological to the point that she is likely to repeat the cycle if/when her daughter is returned to her care." Dr. Mundy did not recommend that mother be the primary caregiver for K.H. At the conclusion of all of the evidence, the circuit court found that mother had a "severe intellectual disability that prevent[ed] her from undertaking responsibility for the care of her child." The evidence was sufficient to support the circuit court's finding because the Department presented sufficient *prima facie* evidence that the conditions which resulted in the neglect or abuse of K.H. could not be "substantially corrected or eliminated so as to allow [K.H.'s] safe return to [mother] . . . within a reasonable period of time." Code § 16.1-283(B)(2).

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Contrary to mother's arguments, the circuit court did not err in terminating mother's parental rights pursuant to Code § 16.1-283(B). "When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1, 684 S.E.2d 219, 220 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the circuit court erred in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2).

*Best interests*

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 319, 746 S.E.2d 509, 521 (2013) (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463).

When K.H. entered foster care, she had to be hospitalized for suicidal ideations. K.H. needed a lot of attention, stability, and structure. The Department presented evidence that K.H. was doing better in her current foster home. She was implementing new coping mechanisms, improving her grades, and receiving support from school, counselors, and her foster home.

Dr. Mundy recommended that mother not be K.H.'s primary caregiver because mother did not "have the ability to be a fulltime parent and custodian and keep herself and her child safe without making the same sort of problematic choices again." Dr. Mundy testified that mother needed someone to help her establish boundaries with K.H. and ensure that K.H. had what she

needed and was safe. Dr. Mundy did not believe that mother could improve her situation because of her limited cognitive skills.

At the conclusion of the matter, the circuit court found that "no effort on [mother's] part, however valued, will correct these deficits either under [Code § 16.1-283] B or C within a reasonable period of time." It further held that K.H. "would be in significant danger if left in the custody and supervision of her mother."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322, 746 S.E.2d at 522 (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)).

Therefore, contrary to mother's arguments, the circuit court did not err in finding that it was in K.H.'s best interests to terminate mother's parental rights and approve the goal of adoption.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.